NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1056
(Serial No. 09/947,801)

IN RE JED MARGOLIN

Jed Margolin, of Reno, Nevada, pro se.

Stephen Walsh, Acting Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Arlington, Virginia. On the brief were John M. Whealan, Solicitor, Joseph G. Piccolo and Nathan K. Kelley, Associate Solicitors.

Appealed from: United States Patent and Trademark Office, Board of Patent Appeals and Interferences

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1056
(Serial No. 09/947,801)

IN RE JED MARGOLIN

_____

DECIDED: June 15, 2007

_____

Before NEWMAN, SCHALL, and DYK, <u>Circuit Judges</u>.

NEWMAN, <u>Circuit Judge</u>.

Mr. Jed Margolin appeals the decision of the United States Patent and Trademark Office, Board of Patent Appeals and Interferences, which affirmed the Examiner's rejection of claims 1-5, all of the claims of United States Patent Application No. 09/947,801 ("the '801 application") as being anticipated by subject matter set forth in U.S. Patent No. 6,167,428

to Ellis.[1]  The finding of anticipation is supported by substantial evidence, and the rejection based thereon is <u>affirmed</u>.

DISCUSSION

The '801 application was filed on September 6, 2001, with priority to U.S. Provisional Application No. 60/249,830 filed on November 17, 2000.  The claims are directed to an Internet-based, distributed computing system and method permitting an exchange of a home network server's resources for something of value.  Claim 1 is representative (with emphases added to the disputed claim terms):

> **1.** A distributed computing system comprising:
> (a) a <u>home network server</u> in a subscriber's home;
> (b) one or more home network client devices;
> (c) an Internet connection;
> whereby <u>the subscriber</u> receives something of value in return for access to the resources of said home network server that would otherwise be unused.

Whether a claim is anticipated and what a reference teaches are questions of fact, whose findings by an expert administrative agency receive deferential review on the "substantial evidence" standard of the Administrative Procedure Act.  5 U.S.C. §706(2)(E). <u>See</u> <u>Dickinson v. Zurko</u>, 527 U.S. 150, 155 (1999); <u>In re Hyatt</u>, 211 F.3d 1367, 1371-72 (Fed. Cir. 2000).  This court must uphold the Board's factual findings of ultimate fact and evidentiary fact, if the findings are supported by substantial evidence in the record before the Board.

A claim is anticipated under 35 U.S.C. §102 when the same invention, including all of the claimed limitations, appear in a single reference.  The determination generally involves

---

1        <u>In re Margolin</u>, No. 2006-2005 (Bd. Pat. App. & Int. Aug. 24, 2006).

a two-step analysis, wherein the Board first construes the claims for purposes of examination, applying to the proposed claims the broadest reasonable meaning of the terms thereof as they would be understood by a person of ordinary skill in the field of the invention. See In re Morris, 127 F.3d 1048, 1054 (Fed. Cir. 1997). The purpose of this examination practice is to facilitate precision in claiming by imposing rigor during prosecution, because claims are readily modified before patent issuance. Id.

The examiner then compares the construed claims to the asserted anticipating reference, to determine whether "each and every limitation is found either expressly or inherently in [that] single prior art reference." In re Crish, 393 F.3d 1253, 1256 (Fed. Cir. 2004) (quoting Celeritas Techs. Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1360 (Fed. Cir. 1998)). During this procedure the applicant may amend the claims in light of cited references, or for any other reason.

The examiner found that the claims are anticipated by the Ellis patent, entitled "Personal Computer Microprocessor Firewalls for Internet Distributed Processing." Ellis describes "computer networks having computers like personal computers or network servers" utilizing distributed processing, thereby enabling a computer user to exchange access to the Internet for use of the computer's processing power when the computer is idle. Ellis patent, col. 11:55-61. Mr. Margolin argues that Ellis does not anticipate the claims because Ellis does not describe a "home network server" or a "subscriber" within the meaning of the claims presented in the '801 application.

The Board observed that the '801 application did not provide a specific definition for the terms "server" and "home network server," but concluded that the Examiner's definition

of "server" as "a computer or program, on the Internet or another network, that responds to commands from a client" was consistent with the '801 specification as well as the use of the term by ordinary skilled artisans. The Board also found that the "home network" term limited only the location of the server and not its function.

In light of the evidence before the Board, the Board's claim interpretation is reasonable. See Morris, 127 F.3d at 1055. Specifically, the '801 specification broadly described the "home network server" of the claimed invention, stating:

> A Home Network Server is used in a home to network various clients such as PCs, sensors, actuators and other devices. * * * Home Network Server 101 is of conventional design and includes a CPU, memory, mass storage (typically a hard disk drive for operations and a CD-ROM or DVD-ROM Drive for software installation), video display capabilities, and a keyboard.

'801 application, ¶¶ 14, 23. This description is broad enough to encompass any apparatus, including conventional personal computers, having a CPU, memory, monitor, and keyboard that can perform a networking function for various other subservient devices. The Board's definition is further supported by evidence in the Examiner's Answer before the Board, wherein the Examiner cited the Microsoft Computer Dictionary 430 (3d ed. 1997) for the definition of "network" relied on by the Board.

Applying these definitions, the Board found that the applicant's "home network server" is met by the personal computers shown by Ellis. The Board found that the Ellis patent broadly described PCs as including "network computers," and that network computers could include both conventional servers and client computers, that may reside at either home or business network systems. We agree that substantial evidence supports this finding. Ellis defined personal computers "as any computer, digital or analog or neural,

particularly including microprocessor-based personal computers having one or more microprocessors . . . in their general current form (hardware and/or software and/or firmware and/or any other component) . . . such as workstations, network computers . . . [and] other household electronic devices." Ellis patent, col. 8:61 to col. 9:8. Moreover, Ellis specifically describes a personal computer that is responsive to a user and a network provider, and having the types of components described in the '801 application and the ability to control other networked devices. Id. at col. 7:38-47; col. 16:33 to col. 17:22. Ellis teaches that the personal computer may reside either at home or in a business network environment. Id. at col. 17:22-40. These teachings constitute substantial evidence to support the Board's conclusion that Ellis discloses the same "home networked server" as do the '801 claims.

With respect to the term "subscriber," Mr. Margolin argues that the Board erred in finding that a device, rather than a person, could meet this term. The Board, however, did not make such a finding. The Board found that the Ellis patent describes a PC user who is a person (not a device) who subscribes to a service that provides Internet access. In the '801 application, the subscriber is referred to as the owner of the Home Network. '801 application, ¶ 16.

Similarly, Ellis discloses a PC user, who may be the PC owner or leaser. Ellis patent, col. 9:16-18. Moreover, the Ellis patent states that the PC user is a "subscriber" (i.e. one who subscribes to a service), stating that the PC user may enter a business arrangement in which the PC user receives "connection to the Internet . . . in exchange for . . . the PC user [making] their PC, when idle, available to the network for shared

processing." Id. at col. 11:55-61. Thus, the Board's finding that the PC user as described in the Ellis patent meets the term limitation "subscriber" in the '801 application claims is supported by substantial evidence, and is affirmed.

The other terms in the '801 application claims were conceded to be met by Ellis. We have reviewed all of the arguments presented by Mr. Margolin, but do not discern reversible error in the Board's rejection of the claims on the ground of anticipation.