*1368 PROST, Circuit Judge,
dissenting.
Consistent with our case law, the United States Patent and Trademark Office (“PTO”), Board of Patent Appeals and Interferences (“Board”) gave the claim term “flexible polyurethane foam reaction mixture” its broadest reasonable interpretation, construing it to include “any reaction mixture which produces, at least ultimately, a flexible polyurethane foam.” Under this construction, substantial evidence supports the Board’s finding of anticipation. Because the majority fails to apply the rule that the Board is entitled to give claim language its broadest reasonable interpretation, I respectfully dissent.
I
As the majority opinion acknowledges, the Board does not engage in the same claim construction process during patent prosecution as a district court would in an infringement suit. Instead, the Board gives claim language its broadest reasonable interpretation consistent with the specification. In re Am. Acad, of Sci. Tech Ctr., 367 F.3d 1359, 1364 (Fed.Cir.2004); In re Morris, 127 F.3d 1048, 1053-54 (Fed.Cir.1997); In re Zletz, 893 F.2d 319, 321 (Fed.Cir.1989); In re Yamamoto, 740 F.2d 1569, 1571-72 (Fed.Cir.1984). This is because, unlike in an infringement suit, the applicant has a chance to amend the claims to more precisely convey his intended meaning. Yamamoto, 740 F.2d at 1571; see also Zletz, 893 F.2d at 322 (“An essential purpose of patent examination is to fashion claims that are precise, clear, correct, and unambiguous. Only in this way can uncertainties of claim scope be removed, as much as possible, during the administrative process.”).
In other words, unlike a district court in an infringement suit, there is no need for the Board (or this court) to engage in a complicated, in-depth claim construction analysis during patent prosecution. In infringement suits, courts take on the difficult task of analyzing the claim terms to ascertain the meaning the terms would have to a person of ordinary skill in the art as of the filing date of the patent application. See Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed.Cir.2005) (en banc). Courts examine the claims, the specification, the prosecution history, and possibly extrinsic evidence — all in an effort “to determine what ‘the applicant regards as his invention.’ ” Id. at 1312, 1314-19 (quoting 35 U.S.C. § 112 ¶ 2). In contrast, one need not engage in a guessing game during patent prosecution. If a claim term is ambiguous or confusing, the applicant can (and should) clarify it. Or, if an applicant wants a claim term to have a specific meaning, the applicant can either amend the claim to expressly convey the applicant’s intended meaning or provide an express definition for the claim term in the specification. See Yamamoto, 740 F.2d at 1571-72 (noting that an applicant can overcome a rejection by amending the claim language); Morris, 127 F.3d at 1054 (noting that the PTO must take into account definitions contained in the specification when interpreting claim language).
Accordingly, if the PTO rejects a claim because a broad construction renders the claim invalid as anticipated, the applicant can, for example, amend the claim to narrow its scope and, thus, overcome the rejection. In this way, interpreting claim language broadly during prosecution “serves the public interest by reducing the possibility that claims, finally allowed, will be given broader scope than is justified.” Yamamoto, 740 F.2d at 1571; see also id. (“The PTO broadly interprets claims during examination of a patent application since the applicant may ‘amend his claims to obtain protection commensurate with his actual contribution to the art.’ ”).
*1369 Because the Board is entitled to give claim language its broadest reasonable interpretation, our precedent requires that our review of the Board’s interpretation be limited to determining whether it was reasonable. In re Crish, 393 F.3d 1253, 1256 (Fed.Cir.2004); In re Bigio, 381 F.3d 1320, 1324 (Fed.Cir.2004); In re Hyatt, 211 F.3d 1367, 1372-73 (Fed.Cir.2000); Morris, 127 F.3d at 1055. Although the majority opinion pays lip service to this precedent, it does not apply it in this case.
II
In this case, the only disputed issue is whether the Eling reference discloses a “flexible polyurethane foam reaction mixture” as required by Buszard’s pending claims. The Board construed this term to include “any reaction mixture which produces, at least ultimately, a flexible polyurethane foam.” In re Buszard, No.2006-1120, 2006 WL 1665669, at *2 (Bd. Pat. App. & Int. Apr. 20, 2006). This construction encompasses mixtures that produce polyurethane foams that are made flexible upon crushing, such as the mixture disclosed in the Eling reference. Accordingly, the Board concluded that Buszard’s representative claims were anticipated by the Eling reference. Id.
Because the Board must give claim language its broadest reasonable interpretation, I would affirm the Board’s construction of “flexible polyurethane foam reaction mixture.” Of course, had Busz-ard’s specification provided a definition of the term “flexible polyurethane foam reaction mixture,” the Board would have been required to give that term the definition recited in the specification. See Morris, 127 F.3d at 1054. But Buszard’s specification does not define this term. And the Board’s interpretation, while broad, is not unreasonable. As explained by the Board, a broad construction is consistent with Buszard’s specification:
For example, the specification discloses in the last full sentence on page 7 that “[t]he flexible polyurethane foam compositions ... according to the present invention include all well known, industrial compositions” (emphasis added). Use of the term “all” supports the proposition that the aforementioned industrial compositions include the compositions of El-ing. Additionally, in the sentence bridging pages 7 and 8 of the specification, [Buszard] disclose[s] that “flexible polyurethane foam compositions can be made according to the present invention by reacting an isocyanate with a polyol in the presence of a foam-forming agent and a blend of tetrahalophthalate esters and phosphorus-containing flame retardant additives.” Because these enumerated ingredients correspond fully to those taught by Eling, the claim interpretation [of “flexible polyurethane foam reaction mixture”] discussed earlier is consistent with this disclosure of [Busz-ard's] specification.
Buszard, 2006 WL 1665669, at *2.
On appeal, Buszard alleges — and the majority appears to agree — that the term “flexible polyurethane foam reaction mixture” has a specific meaning to one of ordinary skill in the art. But neither Buszard’s specification nor his briefs provide a definition. Indeed, he boldly asserts in his reply brief that he “suffer[s] no duty to define an art recognized term.”
I disagree. For one thing, “[i]t is the applicants] burden to precisely define the invention, not the PTO’s.” Morris, 127 F.3d at 1056; see also 35 U.S.C. § 112 ¶ 2 (“The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.”). Moreover, although Buszard as *1370 serts that the terra “flexible polyurethane foam reaction mixture” has a well-defined meaning to someone skilled in the art, not only has Buszard failed to provide any evidence to back up this assertion, his briefs also fail to tell us what that meaning is. The only enlightenment Buszard provides regarding the meaning of “flexible polyurethane foam reaction mixture” is a single page from the Kirk-Othmer Encyclopedia of Chemical Technology, which generally describes the differences between “flexible foam” and “rigid foam.” Nowhere in the record, however, is there any evidence regarding how a person of ordinary skill in the art would interpret the phrase “flexible polyurethane foam reaction mixture.”
In oral argument, Buszard, for the first time, argued that the term “flexible polyurethane foam reaction mixture” should be interpreted to mean a mixture of ingredients that produces flexible foam upon polymerization, without a crushing step. Yet Buszard’s claims do not specifically exclude a crushing step.[1] Nor are his claims limited to chemical reactants that would produce flexible foam without a crushing step.
Buszard nevertheless urges us to engage in the same claim construction process that courts employ in an infringement suit. According to Buszard, we should interpret the disputed claim term narrowly in light of his specification, which describes mixtures of ingredients that produce flexible foam without a crushing step. Busz-ard also points out that the flexible foams described in his specification are consistent with the general description of “flexible foam” in the Kirk-Othmer Encyclopedia of Chemical Technology.
But whether Buszard can provide descriptions of flexible foam that he believes are consistent with his desired interpretation is beside the point. “Absent an express definition in [his] specification, the fact that [Buszard] can point to definitions or usages that conform to [his] interpretation does not make the PTO’s definition unreasonable when the PTO can point to other sources that support its interpretation.” Morris, 127 F.3d at 1056. And in this case, the Board identified passages in Buszard’s specification that support a broad interpretation. I would, therefore, affirm.
Ill
The majority concludes that Buszard’s claims are not anticipated because flexible foam made from a mixture of ingredients that produces flexible foam upon polymerization (i.e., without a crushing step) is different from flexible foam made by first producing rigid foam and then crushing it. That may be true,[2] but it is irrelevant. The relevant question is whether Busz-ard’s claim language can reasonably be interpreted to include the mixture disclosed in the Eling reference, which is capable of producing a flexible polyurethane foam. It can.
Because a patent has not yet issued, Buszard has the ability to correct any ambiguities in his claim language. If Buszard seeks a specific claim interpretation, he *1371 should amend his claim so it conveys his intended meaning.

. Indeed, as the Board noted, "an artisan would consider the flexible polyurethane foam disclosed by [Buszard] as resulting from certain steps (e.g., adding, mixing, heating, etc.), and [Buszard] point[s] to nothing in [his] claims which would have excluded from these steps the crushing step of Eling.” Buszard, 2006 WL 1665669, at *2.

. It is noteworthy that, before the Board, Buszard "[did] not even present argument, much less evidence,” that his flexible foam product differed from the flexible foam product disclosed in the Eling reference. Buszard, 2006 WL 1665669, at*l.