Opinion for the court filed by Circuit Judge LINN. Dissenting opinion filed by Circuit Judge NEWMAN.
LINN, Circuit Judge.
Mitsui Bussan Logistics, Inc. (“Mitsui”) is the assignee of U.S. Patent Application No. 10/798,505 titled “System and Method for Distribution Chain Management” and appeals the affirmance by the Board of Patent Appeals and Interferences (“Board”) of the examiner’s rejection of claims 11 and 21 as anticipated by U.S. Patent Application Pub.2001/0034673 to Yang et al. (“Yang”). Because the Board erred in construing the means-plus-function limitation of claims 11 and 21 and because there is no permissible construction, this court affirms the rejection of claims 11 and 21 on the alternative ground of failure to satisfy the definiteness requirement of 35 U.S.C. § 112 ¶ 2 and remands with instructions to afford Mitsui the same protections under 37 C.F.R. § 41.50(b) as it would have enjoyed had the Board made the proper rejection in the first instance.
I. Background
Independent claims 11 and 21 are pending and on appeal. Claim 11 recites (disputed limitation emphasized):
11. A system for supply chain management comprising:
an order controller system including reverse logistics means for generating transfer data; and
a warehouse system receiving the transfer data and generating shipping data.
Claim 21 similarly contains the “reverse logistics means for ... generating transfer data” limitation of claim 11.
The examiner construed the “reverse logistics means for generating transfer data” *1295 limitation as a means-plus-fnnction limitation. The examiner concluded that “[t]he structure corresponding to the reverse logistics means for transferring is a computer implemented with software.” Based on this construction, the examiner rejected claims 11 and 21 based upon the disclosure in Yang because
[[Image here]]
Yang discloses “any working computer.”
On appeal to the Board, Mitsui challenged the examiner’s anticipation rejection by attacking the examiner’s construction of “reverse logistics means.” In particular, Mitsui contended that Figure 8, shown below, and the accompanying description in paragraphs [0088]-[0093] disclose the corresponding structure for the means-plus-function limitation.
The Board disagreed. It analyzed Figure 8 and the accompanying description and instead found “[tjhere is no structure or algorithm for generating transfer data disclosed in the discussion of Figure 8 at Specification paragraphs!] 0088-93.” Ex parte Aoyama, No. 2009-6755, slip op. at 12 (B.P.A.I. Nov. 17, 2009) (“Initial Decision”). Unable to find structure in Figure 8 and the accompanying description, the Board scoured the specification for any implied structure that could even arguably generate transfer data. Id. The Board, in giving “generating transfer data” a broad construction, focused on the application’s disclosure of generating shipping data. The Board therefore concluded that the *1296 structure for generating transfer data was “open ended” and could be generated by order controller systems, warehouse systems, and distribution systems based upon order data, order allocation data to warehouses, inventory data, and other suitable data. Id. Under this construction, the Board affirmed the examiner’s rejection of claims 11 and 21 over Yang because “[o]ne of ordinary skill knew that any inventory management system that tracked parts at various locations had to document transfers or shipments among locations.” Id. at 15-16. Mitsui filed a timely appeal, and this court has jurisdiction under 28 U.S.C. § 1295(a)(4)(A).
II. Discussion
A. Standard of Review
Determining whether claims are anticipated involves a two-step analysis. The first step involves construction of the claims of the patent at issue. Claim construction is a question of law reviewed de novo. In re Bigio, 381 F.3d 1320, 1324 (Fed.Cir.2004) (citing Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc)). Similarly, “[d]etermining the claimed function and the corresponding structure for a claim limitation written in means-plus-function format are both matters of claim construction.... presenting] issues of law that we review de novo.” WMS Gaming Inc. v. Int’l Game Tech., 184 F.3d 1339, 1347 (Fed.Cir.1999) (citation omitted). The second step involves comparing the claims to the prior art. Anticipation is a question of fact reviewed for substantial evidence. In re Hyatt, 211 F.3d 1367, 1371-72 (Fed.Cir.2000).
B. Claim Construction
i. The Means-Plus-Function Limitation
Mitsui argues that the Board erred in construing the means-plus-function limitation “reverse logistics means for generating transfer data.” According to Mitsui, the specification and the prosecution history clearly link the function of the reverse logistics means for generating transfer data of claims 11 and 21 to the flowchart algorithm of Figure 8. Appellant’s Br. 17. Mitsui contends that by giving the terms of the means-plus-function limitation the “broadest reasonable interpretation” and ignoring the structure disclosed in Figure 8, the Board’s construction failed to comply with this court’s guidance in In re Donaldson Co., 16 F.3d 1189 (Fed.Cir.1994), and WMS Gaming.
The United States Patent and Trademark Office (“Office”) responds that the Board properly gave the means-plus-function limitation its broadest reasonable construction, consistent with Donaldson. 16 F.3d at 1194. The Office contends that because “transfer data” was not defined in the specification, the Board properly construed it in a manner consistent with its plain meaning. This definition, according to the Board, encompassed “shipping data,” which is disclosed in the specification. The Office concludes that the Board properly identified the only implied structure disclosed in the specification that performs the function of generating shipping data. This structure is “a system for supply chain management that includes order controller, warehouse and distributions systems.” Ex parte Aoyama, No. 2009-6755, slip op. at 5 (B.P.A.I. June 16, 2010) (“Decision on Rehearing ”).
“The first step in construing a means-plus-function claim limitation is to define the particular function of the claim limitation.” Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1333 (Fed.Cir.2004) (citation omitted). “The court must construe the function of a means-plus-function limitation to include the limitations contained in the claim language, and only those limitations.” Cardiac Pacemakers, *1297 Inc. v. St. Jude Med., Inc., 296 F.3d 1106, 1113 (Fed.Cir.2002). Here, both parties agree that the identified function of the limitation of claims 11 and 21 at issue is “generating transfer data.”
“The next step in construing a means-plus-function claim limitation is to look to the specification and identify the corresponding structure for that function.” Golight, 355 F.3d at 1334. “Under this second step, structure disclosed in the specification is corresponding structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.” Med. Instrumentation & Diagnostics Corp. v. Elekta AB, 344 F.3d 1205, 1210 (Fed.Cir.2003) (internal citation and quotation omitted).
While claims are still to be given their “broadest reasonable interpretation” during prosecution, “the broadest reasonable interpretation that an examiner may give means-plus-function language is that statutorily mandated in paragraph six.” Donaldson, 16 F.3d at 1194-95. In Donaldson, this court explained that “the [Office] may not disregard the structure disclosed in the specification corresponding to such language when rendering a patentability determination.” Id. at 1195. Moreover, when the disclosed structure is a computer programmed to carry out an algorithm, “the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.” WMS Gaming, 184 F.3d at 1349 (citing In re Alappat, 33 F.3d 1526, 1545 (Fed.Cir.1994) (en banc)).
This court agrees with Mitsui that the specification and the prosecution history clearly link the function of the “reverse logistics means for generating transfer data” of claims 11 and 21 to the flowchart of Figure 8. The Board also recognized some link between the means-plus-function limitation and Figure 8. However, after analyzing Figure 8 and finding insufficient structure disclosed, the Office first expanded its construction of “transfer data” to include “shipping data” and then identified the structure that generates “shipping data.” Initial Decision at 6, 15-16. This was improper. The Board erred by identifying structure that was not clearly linked or associated by the specification or prosecution history with the function actually recited in the claim, i.e., “generating transfer data.” See Med. Instrumentation, 344 F.3d at 1210. The only portion of the specification linked to that function, and the only portion of the specification that Mitsui contends describes the corresponding structure, is the flowchart of Figure 8 and the description thereof in the specification.
ii. Sufficiency of Disclosure
Mitsui contends that the Board’s determination that Figure 8 does not contain sufficient structure to support the limitation “amounts to official notice ... that a flow chart algorithm can never provide the algorithmic structure for a means plus function element.” Appellant’s Br. 20. The Office responds that just because a computer program may be described by a flowchart or algorithm does not mean that every flowchart or algorithm necessarily describes sufficient structure. Appellee’s Br. 17-18.
For means-plus-function limitations where the disclosed structure is a computer programmed to implement an algorithm, the patent must disclose enough of an algorithm to provide the necessary structure under 35 U.S.C. § 112 ¶ 6. See Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1340 (Fed.Cir.2008). The patentee may express this algorithm in any understandable manner, including as a flowchart, so long as sufficient structure is disclosed. Id; see, e.g., AllVoice Comput *1298 ing PLC v. Nuance Commc’ns, Inc., 504 F.3d 1236, 1245 (Fed.Cir.2007). “This court does not impose a lofty standard in its indefiniteness eases.” Finisar, 523 F.3d at 1341. Sufficient structure must simply “permit one of ordinary skill in the art to know and understand what structure corresponds to the means limitation” so that he may “perceive the bounds of the invention.” Id. at 1340-41.
Here, the Board determined that “[t]here is no structure or algorithm for generating transfer data disclosed in the discussion of Figure 8 at Specification paragraphs[ ] 0088-93. These paragraphs do discuss generating shipping data, but again without disclosing any structure or algorithm for doing so.” Initial Decision at 6. This court agrees.
The Board did not purport to announce that a flowchart can never, under any circumstances, provide sufficient structure to satisfy § 112 ¶ 6. To do so would flatly contradict this court’s precedent. See, e.g., Finisar, 523 F.3d at 1340; AllVoice, 504 F.3d at 1245. Instead, the Board simply concluded that the particular flowchart of Figure 8 and its accompanying description fail to provide any structure or algorithm whatsoever. The Board properly recognized that while Figure 8 provides a high level process flow, “it does not describe any structure.” Decision on Rehearing at 4.
This court agrees with the Board’s conclusion that Figure 8 “fails to describe, even at a high level, how a computer could be programmed to produce the structure that provides the results described in the boxes.” Id. at 4-5. Moreover, the Board’s finding is consistent with the Examiner’s finding. The Examiner recited that “[t]he proper test for meeting the definiteness requirement is that the corresponding structure ... of a [mean-plus-function] limitation must be disclosed in the specification itself in a way that one skilled in the art will understand what structure ... will perform the recited function.” Examiner’s Answer of April 23, 2007, at 10-11. After analyzing Figure 8 and its accompanying description, the Examiner was unable to find any structure disclosed that performed the claimed function. Id. Figure 8 only “presents several results to be obtained, without describing how to achieve those results, and certainly not how to generate transfer data.” Decision on Rehearing at 5. The Board, in analyzing the only portion of the specification identified by the applicant as providing structure for the claimed function, was unable to find any disclosure, let alone sufficient disclosure to inform a person of ordinary skill how to program a computer to perform the stated function. Mitsui has failed to establish any error in the Board’s findings on this issue.
C. Indefiniteness
Because the means-plus-function limitation of claims 11 and 21 lacked sufficient disclosure of structure under 35 U.S.C. § 112 ¶ 6, these claims are unpatentable as indefinite under 35 U.S.C. § 112 ¶ 2. Aristocrat Techs. Austl. Pty Ltd. v. Int’l Game Tech., 521 F.3d 1328, 1337-38 (Fed.Cir.2008). Moreover, because “a claim cannot be both indefinite and anticipated,” Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1332 (Fed.Cir.2010), this court does not reach the ground relied on by the Board — that claims 11 and 21 are unpatentable as anticipated in view of Yang. Id. (“If a claim is indefinite, the claim, by definition, cannot be construed. Without a discernable claim construction, an anticipation analysis cannot be performed.”).
Mitsui contends that if this court were to affirm the Board’s rejection of claims 11 and 21 on an alternative basis, such as indefiniteness, this court would run afoul of Securities & Exchange Commission v. *1299 Chenery Corporation, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Mitsui contends that under Chenery, this court may only review the grounds upon which the Board based its determination. Chenery does not stand for so broad a proposition.
As explained by this court in In re Comiskey, 554 F.3d 967, 974 (Fed.Cir.2009), “some of our cases have concluded that it is inappropriate for this court to consider rejections that had not been considered by or relied upon by the Board.” Id. (citations omitted). These cases, however, “referred to situations that required factual determinations not made by the agency.” Id. (citations omitted). Chenery itself made clear that it did not “disturb the settled rule that, in reviewing the decision of a lower court, it must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason.” Chenery, 318 U.S. at 88, 63 S.Ct. 454 (citation and quotation omitted). This is in part due to judicial economy because “[i]t would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the pcnver of the appellate court to formulate.” Id. (emphasis added). Chenery concluded that similar considerations governed the review of administrative orders. Id. As this court has long recognized, and repeated again in Comiskey, “we may, however, where appropriate, affirm the agency on grounds other than those relied upon in rendering its decision, when upholding the agency’s decision does not depend upon making a determination of fact not previously made by the agency.” Comiskey, 554 F.3d at 974 (quoting Killip v. Office of Pers. Mgmt., 991 F.2d 1564, 1568-69 (Fed.Cir.1993)).
It is well established that “[a] determination of claim indefiniteness is a legal conclusion that is drawn from the court’s performance of its duty as the construer of patent claims.” Personalized Media Commc’ns, L.L.C. v. Int’l Trade Comm’n, 161 F.3d 696, 705 (Fed.Cir.1998). As a legal question, failure to satisfy the definiteness requirement of 35 U.S.C. § 112 ¶ 2 is a “ground [for affirmance] within the power of the appellate court to formulate.” Chenery, 318 U.S. at 88, 63 S.Ct. 454. In Comiskey, the Board rejected the applicant’s claims on the basis of obviousness. Comiskey, 554 F.3d at 972-73. On appeal, this court instead affirmed the Board’s rejection as to some claims on the alternative ground of failure to claim statutory subject matter under 35 U.S.C. § 101. Cf. Comiskey, 554 F.3d at 975, 981-82 (holding that lack of statutory subject matter, a legal question, is a permissible alternative ground for affirmance of the Board). Similarly, here, this court may affirm the Board’s rejection of claims 11 and 21 on the alternative legal basis that the claims fail to satisfy 35 U.S.C. § 112 ¶ 2.
The decision of our predecessor, in In re Fleissner, 46 CCPA 831, 264 F.2d 897 (1959), reached the opposite conclusion in a slightly different factual context. The Board in Fleissner rejected the applicant’s claims, containing a means-plus-function limitation, as anticipated in view of a prior art reference. Id. at 898. On appeal, the Office sought to have our predecessor affirm the rejection of the claims on the basis that the means-plus-function limitation lacked a corresponding structure in the specification. Id. at 900. Thus, the Office sought the same result as this court now adopts in this case. Our predecessor, however, was not convinced. In response to the Office’s argument, our predecessor noted that “[t]here was ... no rejection of the claims on appeal as failing to particularly point out and distinctly claim the alleged invention, but rather only a rejection predicated on the [prior art] as an anticipation.” Id. Our predecessor con- *1300 eluded that “[t]o reject the claims as indefinite, we would be compelled to raise a ground of rejection not of record, and thus act beyond our statutory authority.” Id.
Fleissner is distinguishable on at least two grounds. First, as recognized by this court in Comiskey, while claim construction and indefiniteness are now recognized as legal questions, it “was not at the time seen as legal in nature.” Comiskey, 554 F.3d at 975 n. 5 (discussing Fleissner, 264 F.2d at 900). Second, to the extent that a determination of indefiniteness as to a means-plus-function limitation may be viewed as predicated upon “a determination of policy or judgment which the agency alone is authorized to make,” the Board made such determination here. Cfi Chenery, 318 U.S. at 88, 63 S.Ct. 454 (stating “[i]f an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment.” (emphasis added)). Here, the Board expressly found that “Figure 8 ... does not describe any structure,” Decision on Rehearing at 4, and that “[tjhere is no structure or algorithm for generating transfer data disclosed in the discussion of Figure 8 at Specification paragraphs[ ] 0088-93,” Initial Decision at 6.
The nature of the Board’s error, as explained above, was in its construction of the means-plus-function limitation in claims 11 and 21. The Board first looked to the portion of the specification that was clearly linked to the claimed function. Finding no structure disclosed therein, the Board scoured the specification in search of any implied structure, regardless of whether the structure found was linked to the claimed function of the means-plus-function limitation. Decision on Rehearing at 3. The Office argues that this approach “gave [Mitsui] the benefit of any doubt regarding the definiteness of his means-plus-function claims.” Appellee’s Br. 21. This court fails to see any “benefit” flowing to Mitsui from the Board’s improper construction of Mitsui’s means-plus-function claims. Rather than making the proper rejection under 35 U.S.C. § 112 ¶ 2, the Board instead construed Mitsui’s structure to be “open ended” and satisfied by “any combination of hardware and/or software programmed to perform this [open ended] functionality.” Decision on Rehearing at 3; Initial Decision at 6. The Office notes that, under current guidance, “an Examiner faced with [Mitsui]’s claims might well reject them as indefinite.” Appellee’s Br. 22 n.6, and that either way “[Mitsui] will have to amend [its] claims.” Id. at 22.
Ordinarily, if this court were to simply affirm the Board’s rejections, Mitsui would not be permitted to amend its claims. Manual of Patent Examining Procedure § 1216.01 (“If all claims in the case stand rejected ... it is ordinarily not open to subsequent amendment and prosecution by the applicant. However, exceptions may occur where the mandate clearly indicates that further action in the [Office] is to be taken in accordance with the Federal Circuit’s opinion.” (citations omitted)). Of course, if the Board had issued a § 112 ¶ 2 rejection in the first instance, Mitsui would have had the opportunity to amend its claims or to submit new evidence rebutting the new ground of rejection under 37 C.F.R. § 41.50(b) (“The new ground of rejection is binding upon the examiner unless an amendment or new evidence not previously of record is made which, in the opinion of the examiner, overcomes the new ground of rejection stated in the decision.”). This court therefore affords Mitsui the same protections as it would have had before the Board with respect to the rejected claims. See Comiskey, 554 F.3d at 981-82; see also 35 U.S.C. § 144 (stating that this court’s mandate shall govern further proceedings before the Office).
*1301 III. Conclusion
For the foregoing reasons, this court affirms the Board’s rejections of claims 11 and 21 albeit on the alternative ground of failure to satisfy the definiteness requirement of 35 U.S.C. § 112 ¶ 2. Moreover, this court remands with instructions to afford Mitsui the same protections under 37 C.F.R. § 41.50(b) as it would have enjoyed had the Board made the proper rejection in the first instance.
AFFIRMED AND REMANDED
Costs
Each party shall bear its own costs.