# United States Court of Appeals
# for the Federal Circuit

---

**FLO HEALTHCARE SOLUTIONS, LLC,**
*Appellant,*

**v.**

**DAVID J. KAPPOS, DIRECTOR,
UNITED STATES PATENT AND TRADEMARK
OFFICE,**
*Appellee,*

AND

**RIOUX VISION, INC.,**
*Appellee.*

---

2011-1476

(Reexamination No. 95/000,251)

---

Appeal from the United States Patent and Trademark
Office, Board of Patent Appeals and Interferences.

---

Decided: October 23, 2012

---

GEORGE T. SCHOOFF, Harness, Dickey & Pierce, PLC,
of Troy, Michigan, argued for appellant.

THOMAS W. KRAUSE, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were RAYMOND T. CHEN, Solicitor and AMY J. NELSON, Associate Solicitor. Of counsel was KRISTIN L.R. SAWERT, Associate Solicitor.

---

Before NEWMAN, PLAGER, and WALLACH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PLAGER. Additional views filed by *Circuit Judge* PLAGER. Additional views filed by *Circuit Judge* NEWMAN.

PLAGER, *Circuit Judge*.

Flo Healthcare Solutions, LLC ("Flo") appeals from a decision of the Board of Patent Appeals and Interferences ("Board")[1] of the United States Patent and Trademark Office ("PTO") in *inter partes* Reexamination Control No. 95/000,251.[2] The Board upheld the examiner's rejections of claims 8-17, 23, 24, 35, 40-42, 73, 76-79, 87, and 88. After full review of the parties' arguments we arrive at the same conclusion, but get there, as we shall explain, by

---

[1]    Pursuant to the America Invents Act ("AIA") amendments to Title 35 (*see* Public Law 112-29), the Board officially changed its name from the Board of Patent Appeals and Interferences to the Patent Trial and Appeal Board on September 16, 2012.

[2]    *Rioux Vision, Inc. v. Flo Healthcare Solutions, LLC*, No. 2010-010026, 2011 WL 289281 (B.P.A.I. Jan. 27, 2011) ("*Board Opinion*"), *reh'g denied*, 2011 WL 1211213 (B.P.A.I. Mar. 30, 2011). While the reexamination was pending, Flo assigned the patent at issue, United States Patent No. 6,721,178, to InterMetro Industries Corporation ("InterMetro"). Flo then merged into InterMetro, with InterMetro the surviving entity. In this opinion, however, we adopt the parties' practice of referring exclusively to Flo.

a different route. Accordingly, we correct the Board's analysis, but affirm the Board's conclusion.

BACKGROUND

The patent under reexamination, United States Patent No. 6,721,178, describes a mobile computer workstation intended for medical care environments. *Id.* at [54]. Figures 4A, 10A, and 16 of the '178 patent illustrate representative embodiments of the claimed invention.



Flo sued Rioux Vision, Inc. ("Rioux") in the United States District Court for the Northern District of Georgia for infringing the '178 patent.[3] Rioux then initiated an

---

[3] *Flo Healthcare Solutions, LLC v. Rioux Vision, Inc.*, Case No. 1:06-CV-2600-TWT (N.D. Ga. filed Oct. 26, 2006). The district court stayed the infringement suit pending the PTO's final determination in the reexamination. The parties later agreed to voluntarily dismiss the infringement suit with prejudice.

*inter partes* reexamination of the '178 patent in the PTO, which led to this appeal.[4]

The PTO granted Rioux's request for *inter partes* reexamination, finding a substantial new question of patentability with respect to all forty-four claims of the '178 patent. The examiner initially issued thirteen different obviousness rejections, nine of which relied on United States Patent No. 5,287,815 to Gross ("Gross") as a primary reference. Gross discloses a computer workstation for supporting and positioning a computer keyboard and video display terminal at optimal ergonometric positions with respect to the user. *Id.* at [57]. Figures 1 and 8 of Gross are representative.

---

[4] An *inter partes* reexamination is a PTO proceeding permitted under Title 35 prior to the AIA amendments (*see* n.1, *supra*), by which a third party could challenge the validity of an issued patent. 35 U.S.C. §§ 311-318 (added November 29, 1999; amended September 16, 2011). "Unlike an ex parte reexamination proceeding, an inter partes reexamination proceeding allows the third-party requester to participate in the reexamination by submitting written comments addressing issues raised in the patent owner's response to an office action, appealing a decision in favor of patentability, and participating as a party to an appeal taken by the patent owner." *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1332 (Fed. Cir. 2008). Effective September 16, 2012, the AIA amendments replaced *inter partes* reexaminations with a new *inter partes* review process. 35 U.S.C. §§ 311-319.



FIG.1



FIG.8

Flo traversed the rejections, added 103 new claims, and submitted an Information Disclosure Statement listing twelve non-patent literature references. The examiner then issued an Action Closing Prosecution in

which he found fifty-three of the claims allowable and determined that sixteen would be allowable if rewritten in independent form. The examiner withdrew the rejections that did not rely on Gross as a primary reference, and issued seven new rejections based on several of the references Flo had listed in its Information Disclosure Statement. Three of the new rejections cited an industry brochure ("Ergotron") as a primary reference. Ergotron discloses customizable mobile computer workstations. In one example, Ergotron illustrates a workstation with an adjustable work surface to fit the height of the user.



In response to the Action Closing Prosecution, Flo amended the objected claims to place them in allowable format, and argued, *inter alia*, that the prior art rejections were improper as applied to those of the pending claims that recite a "height adjustment mechanism." Independent claim 8 is representative of those claims.

8.   A mobile workstation, comprising:

a moveable chassis;

a substantially horizontal tray supported by the chassis that defines a work surface;

**a height adjustment mechanism** for altering the height of the horizontal tray;

a display screen adjacent to the work surface that is tiltable relative to the work surface;

an input device tray supported adjacent to the work surface; and

a power unit supported by the chassis for supplying power to the display screen.

'178 patent col. 26, ll. 14-27 (emphasis added).

Flo argued that the "height adjustment mechanism" limitation is a means-plus-function limitation that invokes 35 U.S.C. § 112, ¶ 6. Flo further argued that the function performed by the "height adjustment mechanism" is "altering the height of the horizontal tray," and that the corresponding structure disclosed in the written description for performing that function includes a length-adjustable vertical beam. Flo further argued that both Gross and Ergotron use fixed-length vertical structures to adjust the height of their horizontal work surfaces, and that none of the cited secondary references cures this deficiency in Gross and Ergotron. Thus, Flo argued, the claims reciting a "height adjustment mechanism" were patentable over the cited prior art.

The examiner then issued a Right of Appeal Notice in which he determined that sixty-two of the pending claims were patentable and that forty-five would be allowable if rewritten in independent form. However, the examiner maintained the rejections of the "height adjustment mechanism" claims. According to the examiner, "the claims at issue here do not contain the phrase 'means for,' and are therefore presumed not to fall under section 112

paragraph 6. They do recite structure for performing the function recited in the claim, so the presumption is not overcome." Right of Appeal Notice at 25. Flo appealed to the Board.

The Board agreed with Flo that "the disputed claim limitation [height adjustment mechanism] must be interpreted in accordance with 35 U.S.C. § 112, ¶ 6" because it "does not recite sufficient structure for performing the recited function." *Board Opinion*, 2011 WL 289281, at *9. According to the Board, "the terms 'height adjustment' merely qualify the recited 'mechanism,' which has not been shown to inherently impart structure, with a function or purpose ('height adjustment')." *Id.* The Board noted, however, that "[t]he description in the '178 Patent . . . does not compel a conclusion that the recitation of a 'height adjustment mechanism' necessarily requires the presence of a vertical beam." *Id.* at *10. Thus, the Board "f[ou]nd no error in the Examiner's conclusion that the limitation, even if subject to 35 U.S.C. § 112, ¶ 6, does not require a vertical beam *as part of* the recited 'height adjustment mechanism.'" *Id.* at *9 (emphasis in original). Based on the examiner's factual finding that Gross and Ergotron read on the "height adjustment mechanism" limitation absent a vertical beam requirement, the Board affirmed the prior art rejections with respect to all but one of the disputed claims. *Id.* at *10-11.

Flo appealed to this court. We have jurisdiction under 35 U.S.C. § 1295(a)(4)(A).

DISCUSSION

I.

According to Flo, the Board properly held that the "height adjustment mechanism" limitation must be interpreted in accordance with 35 U.S.C. § 112, ¶ 6. Appel-

lant's Corrected Br. at 10.  Flo argues, however, that the Board committed legal error when it construed the "height adjustment mechanism" limitation as not including a length-adjustable vertical beam, because the written description "clearly links *and* associates a length-adjustable vertical beam with altering or adjusting the height of the horizontal tray."  *Id.* at 17 (emphasis in original).

We agree with Flo that the Board's decision was predicated upon a legally erroneous construction of the "height adjustment mechanism" limitation.  *Id.* at 4. However, the error does not lie, as Flo urges, in the Board's analysis of the structures disclosed in the written description for altering the height of the horizontal tray. Rather, the Board erred in holding that the "height adjustment mechanism" limitation invokes 35 U.S.C. § 112, ¶ 6 in the first place.

Our cases have established two guidelines for determining whether the special rules of claim construction set forth in § 112, ¶ 6 apply to a given claim limitation.  The guidelines are straightforward:  use of the word "means" creates a rebuttable presumption that the drafter intended to invoke § 112, ¶ 6, while failure to use the word "means" creates a rebuttable presumption that the drafter did not intend the claims to be governed by § 112, ¶ 6. *See Personalized Media Commc'ns LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703-04 (Fed. Cir. 1998).  In rebutting the presumption, when  a claim recites a function "but then goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format even if the claim uses the term means." *Id.* at 704 (quoting *Sage Prods. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427-28 (Fed. Cir. 1997) (internal quotes omitted)). Conversely, "a limitation lacking the term 'means' may

overcome the presumption against means-plus-function treatment if it is shown that 'the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function.'" *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006) (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002)).

Since the term "means" is not present in the claims on appeal, it is the latter form of rebuttal that is at issue here. The Board determined that the presumption was sufficiently rebutted because "the disputed claim limitation [height adjustment mechanism] does not recite sufficient structure for performing the recited function." *Board Opinion*, 2011 WL 289281, at \*9. According to the Board, "the terms 'height adjustment' merely qualify the recited 'mechanism,' which has not been shown to inherently impart structure, with a function or purpose ('height adjustment')." *Id.* Thus, the Board "conclude[d] that the disputed claim limitation must be interpreted in accordance with 35 U.S.C. § 112, ¶ 6." *Id.*

We are not convinced that the presumption against a means-plus-function construction is that easily rebutted. "Our cases make clear . . . that the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome." *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004). When the claim drafter has not signaled his intent to invoke § 112, ¶ 6 by using the term "means," we are unwilling to apply that provision without a showing that the limitation essentially is devoid of anything that can be construed as structure. *See Masco Corp. v. United States*, 303 F.3d 1316, 1327 (Fed. Cir. 2002). Thus, we will not apply § 112, ¶ 6 if the limitation contains a term that "is used in common parlance or by persons of skill in the

pertinent art to designate structure." *Lighting World*, 382 F.3d at 1359.

It is the case that the generic term "mechanism" standing alone may connote no more structure than the term "means." *Mass. Inst. of Tech.*, 462 F.3d at 1354. However, we have also recognized that surrounding claim language further defining the mechanism can add sufficient structure to avoid a § 112 ¶ 6 construction. *Id.* In *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996), for example, we held that § 112, ¶ 6 did not apply to the claim limitation "detent mechanism" because dictionary definitions established that "the noun 'detent' denotes a type of device with a generally understood meaning in the mechanical arts . . . ." *Id.* at 1583.

Dictionary definitions similarly show that the noun "adjustment," which modifies "mechanism" here, has a reasonably well-understood meaning as a name for a structure. *See Random House Unabridged Dictionary* 25 (2d ed. 1993) ("3. a device, as a knob or lever, for adjusting: *the adjustments on a television set*").[5] While this definition certainly "qualif[ies] the recited 'mechanism' . . . with a function or purpose," *Board Opinion*, 2011 WL 289281, at *9, a drafter's decision to define "a particular mechanism . . . in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6)" because "[m]any devices take their names from the functions they perform." *Greenberg*, 91 F.3d at 1583. "Height adjustment mechanism" is just such a term.

---

[5]     *But cf. Webster's Ninth New Collegiate Dictionary* 57 (1985) ("4. a means (as a mechanism) by which things are adjusted to one another").

No evidence intrinsic to the '178 patent casts doubt on this conclusion. The term "height adjustment mechanism" appears in the written description of the '178 patent twenty-four times, and not once is it used in a purely functional manner designed to invoke § 112, ¶ 6. Instead, the written description typically uses the term "height adjustment mechanism" to designate a class of structures that are generally understood to persons of skill in the art. For example, the '178 patent teaches: "In addition [to a gas-spring mechanism], other types of height adjustment mechanisms would also be suitable, such as a rack and pinion mechanism, a cable and pulley mechanism, a ratchet mechanism, a ball screw mechanism, a removable pin and holes arrangement, and so forth." *Id.* col. 9, ll. 3-8. Thus, the written description confirms that the term "height adjustment mechanism" indicates a structure, and is not "simply a nonce word or a verbal construct that is [used as] . . . a substitute for the term 'means for.'" *Lighting World*, 382 F.3d at 1360.

We find that the term "height adjustment mechanism," as used in the '178 patent and in common parlance, reasonably imparts sufficient structure so that the presumption against applying § 112, ¶ 6 in this context is not overcome. Accordingly, the Board erred by construing the "height adjustment mechanism" limitation under § 112, ¶ 6.[6] We thus disapprove that portion of the Board's decision.[7]

---

[6]    We arrive at this conclusion under either the deferential standard of review stated in *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997), or the non-deferential review standard stated in *In re Baker Hughes*, 215 F.3d 1297, 1301 (Fed. Cir. 2000). *See* accompanying Additional Views.

[7]    In reaching this conclusion, we do not run afoul of *Securities & Exchange Commission v. Chenery Corp.*, 318

However, although the Board's decision was predicated upon a legally erroneous construction of the "height adjustment mechanism" limitation, we nevertheless agree with the Board's ultimate conclusion that the claims do not require a length-adjustable vertical beam. *Board Opinion*, 2011 WL 289281, at *9. The claims themselves do not recite such a limitation. It is true that all of the embodiments discussed in the patent have a length-adjustable vertical beam, but it is not proper to import from the patent's written description limitations that are not found in the claims themselves. *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 792 (Fed. Cir. 2010) ("A construing court's reliance on the specification must not go so far as to import limitations into the claims from examples or embodiments appearing only in a patent's written description unless the specification makes clear that the patentee intends for the claims and the embodiments in the specification to be strictly coextensive.") (internal quotation marks omitted).

We are mindful that this case comes to us on appeal from the PTO. During reexamination Flo presumably could have included a length-adjustable vertical beam limitation in the disputed claims; indeed, Flo did just that

---

U.S. 80 (1943). This court has long recognized that we may, "where appropriate, affirm the agency on grounds other than those relied upon in rendering its decision, when upholding the agency's decision does not depend upon making a determination of fact not previously made by the agency." *In re Comiskey*, 554 F.3d 967, 974 (Fed. Cir. 2009). We also need not remand for further proceedings before the PTO as we did in *In re Aoyama*, 656 F.3d 1293 (Fed. Cir. 2011), since Flo would not have had the opportunity to further amend the claims or submit new evidence rebutting the presumption against application of 35 U.S.C. § 112, ¶ 6 had the Board upheld the examiner's claim construction in the first place.

with several of the claims that are not on appeal. But with the claims on appeal, Flo for whatever reasons chose not to make that change. Because Flo decided not to amend the disputed claims to directly include a length-adjustable vertical beam when it had the opportunity to do so, we decline to read such a limitation into the claims on appeal. We thus affirm the Board's conclusion that the claims do not require a length-adjustable vertical beam.

## II.

Having corrected the claim construction, we now apply that construction to the PTO's prior art rejections. Anticipation under 35 U.S.C. § 102 is a question of fact, *In re Hyatt*, 211 F.3d 1367, 1371-72 (Fed. Cir. 2000), while obviousness under 35 U.S.C. § 103 is a question of law based on underlying findings of fact, *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). We uphold the Board's factual determinations unless they are not supported by substantial evidence, and review the Board's legal conclusions without deference. *Id.*

As earlier set forth, representative claim 8 recites a mobile workstation comprising: (a) a movable chassis, (b) a substantially horizontal tray supported by the chassis that defines a work surface, (c) a height adjustment mechanism for altering the height of the horizontal tray, (d) a display screen adjacent to the work surface that is tiltable relative to the work surface, (e) an input device tray supported adjacent to the work surface, and (f) a power unit supported by the chassis for supplying power to the display screen. The Board found no error in the examiner's factual finding that the cited prior art references either teach or suggest each of these limitations, and affirmed the examiner's prior art rejections with respect to all but one of the disputed claims. *Board Opinion*, 2011 WL 289281, at *10-11.

Based on our review of the record, we are satisfied that the factual determinations underlying the Board's decision are supported by substantial evidence, and that the Board came to the correct legal conclusions based on those facts. Flo does not suggest otherwise. Flo's only argument on appeal is that the prior art fails to teach or suggest a length-adjustable vertical beam. But as we have discussed, the claims on appeal when properly construed do not require a length-adjustable vertical beam. And as Flo acknowledges, the prior art rejections must stand in the absence of such a limitation. Oral Argument at 8:10-8:40, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-1476/all. We thus affirm the Board's decision that the claims are not allowable.

## CONCLUSION

For the foregoing reasons, we affirm the Board's rejection of claims 8-17, 23, 24, 35, 40-42, 73, 76-79, 87, and 88 under 35 U.S.C. §§ 102 and 103.

## **AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**FLO HEALTHCARE SOLUTIONS, LLC,**
*Appellant,*

**v.**

**DAVID J. KAPPOS, DIRECTOR,
UNITED STATES PATENT AND TRADEMARK
OFFICE,**
*Appellee,*

**AND**

**RIOUX VISION, INC.,**
*Appellee.*

---

2011-1476

(Reexamination No. 95/000,251)

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

PLAGER, *Circuit Judge*, additional views.

### The Standard of Review for Board Claim Constructions

The opinion in this case intentionally elides the question of the standard of review applied by this court to claim construction decisions of the Board (the Patent Trial and Appeal Board, formerly the Board of Patent

Appeals and Interferences). The reason is that various of our cases seem to apply one or the other of two (possibly three—see *infra*) inconsistent standards, mostly without acknowledging that the other standard exists. It is difficult to know which of these standards is the operative one. In this case, the outcome is the same under whatever standard, but that may not always be the case, and it is not helpful to the bar and the parties in appeals to this court to leave the issue unclear.

One standard of review is exemplified by the 1997 decision of this court in *In re Morris*.[1] In *Morris,* the first issue decided was whether, in light of two then-recent *en banc* decisions by this court, *Markman*[2] and *In re Donaldson*,[3] the Board was free to continue applying its "broadest reasonable interpretation" standard to claim construction issues before it. We held "yes." *Morris* continues to be cited to this day by the PTO as authority for the Board to apply that standard to claim construction when an appeal is taken to the Board from an examiner's rejection of a claim. *See, e.g.*, the Government's brief in this case at p. 14.

With regard to the further question—the standard of review applied by this court when in turn we review the Board's claim construction—*Morris* went on to say that "[t]he question then is whether the PTO's interpretation of the disputed claim language is 'reasonable.'"[4] The term "reasonable" in that context could be seen as a reflection of the Board's use of a "broadest reasonable interpretation" standard, which *Morris* had just approved.

---

[1]     *In re Morris*, 127 F.3d 1048 (Fed. Cir. 1997).
[2]     Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc).
[3]     *In re Donaldson*, 16 F.3d 1189 (Fed. Cir. 1994) (*en banc*).
[4]     *Morris*, 127 F.3d at 1055.

In terms of the later-required Administrative Procedure Act (APA) review standard,[5] "reasonable" can be seen as reflecting the notion of "not arbitrary and capricious," the APA standard for non-fact issues that are not "pure" questions of law. However ascribed, at a minimum it connotes a deferential standard. *Morris* itself affirmed the Board's decision by noting "that the PTO's interpretation is reasonable in light of all the evidence before the Board."[6] This deferential "is the Board's decision reasonable" standard for review of Board claim constructions, pronounced in *Morris,* has been followed by a number of Federal Circuit cases since then, including one as recent as 2010.[7]

However, a few years after *Morris,* an opinion of this court, *In re Baker Hughes,*[8] announced a different review standard for this court when evaluating a Board claim construction. The question in the case was whether the Board was correct in holding the claims at issue obvious. The opinion noted the usual rule that we treat without deference to the lower forum the ultimate question of whether a claim is obvious. The opinion further acknowledged that the APA applied to Board decisions: "We review . . . the Board's findings of fact for substantial evidence because they are 'on the record of an agency hearing provided by statute,'" citing APA § 706.[9]

---

[5]    *See Dickinson v. Zurko*, 527 U.S. 150, 152 (1999).

[6]    *Morris*, 127 F.3d at 1055.

[7]    *See, e.g.*, *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1259 (Fed, Cir. 2010); *In re ICON Health and Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007); *In re Crish*, 393 F.3d 1253, 1256 (Fed. Cir. 2004).

[8]    *In re Baker Hughes*, 215 F.3d 1297 (Fed. Cir. 2000).

[9]    *Id.* at 1300.

Later in the opinion, however, the court stated a no-deference test regarding review of the Board's claim construction, comparable to that of district court constructions: "Although the PTO gives claims the broadest reasonable interpretation consistent with the written description . . . claim construction by the PTO is a question of law that we review de novo, . . . just as we review claim construction by a district court."[10]  As authority for that proposition *Baker Hughes* cited the earlier *en banc* opinion in *In re Donaldson*; *Morris* was not cited.

As noted above, *In re Donaldson* was one of the cases considered in *Morris,* and found not to be controlling regarding the standard of review.  It is true that the *Donaldson* opinion had stated the review rule in non-deferential "de novo" terms, but had explained that the standard applied to cases in which "there are no underlying factual issues."[11]  In any event, the no-deference language subsequently picked up in *Baker Hughes* regarding review of Board claim construction decisions, analogous to district court reviews, has been recited in various cases, including as recently as this year.[12]

The consequence of all this is that we now appear to have two contradictory lines of authority on the question of how this court reviews Board claim constructions—a deferential "reasonable" (arbitrary/capricious-type) review, and a no-deference "pure" law type review.  The fact that the APA now governs our review of PTO decisions

---

[10]   *Id.* at 1301.
[11]   *Donaldson,* 16 F.3d at 1192.
[12]   *See, e.g., In re Montgomery,* 677 F.3d 1375 (Fed. Cir. 2012); *In re Aoyama,* 656 F.3d 1293, 1296 (Fed. Cir. 2011); *In re NTP, Inc.,* 654 F.3d 1268, 1273 (Fed. Cir. 2011); *In re Am. Acad. Of Sci. Tech Ctr.,* 367 F.3d 1359, 1364 (Fed. Cir. 2004); *In re Bigio,* 381 F.3d 1320, 1324 (Fed. Cir. 2004).

does not provide guidance on which is the right standard. This is because the APA itself provides one standard for "pure" questions of law—which are reviewed without deference—and different, more deferential, standards for questions of fact and for mixed questions of fact and law.[13]

The question then becomes whether claim construction by the Board is to be considered a question of "pure" law—the way this court treats claim construction in district court litigation under *Cybor Corp.*[14]—and thus to be reviewed without deference; or whether it is something else, a blend of law and fact and judgment—as the Supreme Court said in *Markman*,[15] a "mongrel practice"—in which case it is at least arguably subject to the "arbitrary and capricious" standard of APA § 706. Interestingly, none of the cases applying the *Baker Hughes* no-deference standard has paused to explain why that is the preferable standard as a matter of law or policy, or how it relates to the review standard that the Board uses.

*Morris,* as one of the first of the cases to pronounce on this issue with its "reasonableness" standard, is presumptively the controlling precedent until overturned by the court *en banc* or by the Supreme Court.[16] However, *Morris* was handed down before this court decided that claim construction in district courts would be reviewed without deference, so it did not have the benefit of the arguments in favor of a "pure" question of law approach, nor did it have cause to recognize the potential problem of having two inconsistent review standards. That latter

---

[13]    5 U.S.C. § 706.

[14]    Cybor Corp. v. FAS Techs, Inc., 138 F.3d 1448 (Fed. Cir. 1998); see also Markman v. Westview Instr., 517 U.S. 370 (1996).

[15]    *Markman,* 517 U.S. at 378.

[16]    *South Corp. v. U.S.,* 690 F.2d 1368 (Fed. Cir. 1982).

problem is rendered more acute by the Board's use of the "broadest reasonable interpretation" in reexaminations, raising the potential of parallel appeals over a Board decision and a district court decision applying different standards of review to the same claim construction question.[17]

The ostensible purpose behind the PTO's use of the "broadest reasonable interpretation" of an applicant's proposed claim is to allow the examiner and the applicant to explore the possible scope of the claim, particularly as it implicates prior art, and to provide opportunity during the review process for clarification and refinement of the claim language. In that sense it is an administrative tool used by the PTO upon initial consideration of claims, aimed at "fashion[ing] claims that are precise, clear, correct, and unambiguous,"[18] a goal much to be desired. Later, when a claim construction issue arises, for example in an infringement suit, the search is for the one "correct" interpretation that reflects those qualities. Thus when a district court addresses claim construction, the obligation in the first instance is on the district court trying the matter, and ultimately on the appellate court, to make that determination.

One of the principal purposes behind the creation of this court was to provide national uniformity in patent matters. It can be argued that a uniform standard for review of claim construction matters, regardless of the forum whose decision is being appealed, would be consistent with that purpose. That would suggest applying a single "question of law" standard—determining the single "correct" interpretation—in reviewing Board claim con-

---

[17]   *Cf. In re Baxter Intern. Inc.*, 678 F.3d 1357, 1366 (Fed. Cir. 2012) (Newman, J., dissenting).
[18]   *In re Zletz*, 893 F.2d 319, 322 (Fed. Cir. 1989).

structions just as in reviewing district court claim constructions.

However, that creates at least the appearance of an incompatible situation in the review process, since this court presumptively would be applying a more narrow interpretation to the claims than the Board did. To the extent the Board upholds an examiner's "broadest reasonable interpretation" of a claim, even though the Board might itself have thought a different construction was the single "correct" one, there is a potential for the Board to find itself overruled on appeal even though it might have arrived at the same interpretation as the appellate court under a more narrow standard.[19] Given that this court's role in these cases is to review an agency decision on the record before the agency, the question must be asked whether a no-deference standard is consistent with that role, and with the deference that *Zurko* commands this court give to the PTO.

This incompatibility concern assumes that there is a substantive difference, rather than just a verbal one, between the "broadest reasonable interpretation" and what would be the single "correct" interpretation. Said another way, it assumes that, conceptually at least, the Board's application of the "broadest reasonable interpretation" of the contested claim language can include within it the single "correct" interpretation, but may include other reasonable interpretations as well.

A recent case in this court suggests a third possible standard for review of Board claim constructions that

---

[19] Whether the Board in reviewing examiner rejections could or should apply a more narrow standard of review is a policy question for the PTO; *Morris* approved but did not mandate the Board's use of the "broadest reasonable interpretation" standard.

bridges this concern, a standard to my knowledge not previously articulated. In *Abbott Diabetes Care, Inc.*,[20] the court began its discussion of the case saying, "[c]laim construction is a legal question, reviewed de novo. . . . In contrast to district court proceedings involving an issued patent, claims under examination before the PTO are given their broadest reasonable interpretation consistent with the specification."[21] Though that leaves open exactly what standard the court itself was intending to apply, the court later said, "[w]e conclude, therefore, that under the broadest reasonable construction, [the term at issue] is properly interpreted to mean [what the court understood it to mean]. Accordingly we vacate the Board's decisions . . . and remand for the Board to apply the correct claim construction."[22]

On its face, this appears to be a blend of the other two standards—non-deferential review by the court, but with the court applying the broadest reasonable interpretation of the claim consistent with the administrative practice, rather than a single "correct" interpretation. In effect, the decision of the Board would become irrelevant since the court reapplies "de novo" the Board standard to the facts of the case. (Later in its conclusion, however, the opinion notes that the Board's construction of a particular term in dispute was "unreasonable and inconsistent with the specification," which sounds more like *Morris's* "reasonableness" test.[23])

This blended approach, if that is what the court applied, has the benefit of avoiding the incompatibility problem noted earlier between the Board's broad review

---

[20]  *In re Abbott Diabetes Care Inc.*, Nos. 2011-1516, 1517, 2012 WL 4465236 (Fed. Cir. September 28, 2012).

[21]  *Id.* at *4 (citations omitted).

[22]  *Id.* at *6 (footnote omitted).

[23]  *Id.* at *7.

standard and a single correct review standard (assuming those are operationally different), but it retains the possibility of competing outcomes between decisions reviewing the Board and those reviewing a district court construction of the same claim language. Under what circumstances this third standard will produce results that differ from those that might be reached under either the *Morris* or *Baker Hughes* standards is an existential question about which I offer no view.

Whichever way this court's review rule should be cast, and for whatever reasons, it is perhaps time that the court definitively decide *en banc* on an agreed review standard, one that provides clear direction to the PTO and the inventor community. Although the review standard may not always dictate the result, as a matter of basic court law there should be one standard uniformly applied by the court to Board claim constructions, rather than what may appear to be panel-dependent articulations.[24]

Rules of law provide the predictions for future decisions, on which citizens can rely in the conduct of their activities. As a court of appeals, it is this court's function to decide the cases before it, but also to rationalize and clarify the applicable rules of law. When, as here, there exists an unnecessary lack of clarity in our rules, I believe we have an obligation as a court to address the problem and, if possible, correct it.

---

[24] Mea culpa—my recognition of this problem stems in part from my trying for purposes of this case to determine what is the proper statement of the standard, and from having authored *Morris* and also having been on the panel in *Baker Hughes*.

# United States Court of Appeals for the Federal Circuit

---

**FLO HEALTHCARE SOLUTIONS, LLC,**
*Appellant,*

**v.**

**DAVID J. KAPPOS, DIRECTOR,
UNITED STATES PATENT AND TRADEMARK
OFFICE,**
*Appellee,*

AND

**RIOUX VISION, INC.,**
*Appellee.*

---

2011-1476

(Reexamination No. 95/000,251)

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

NEWMAN, *Circuit Judge*, additional views.

This court is charged with assuring, through judicial process, that correct patent law is consistently and correctly applied, in the administrative agencies and in the courts. Our judicial obligation is not merely of philosophical concern, but of critical economic consequence.

The Federal Circuit Court of Appeals was created so that all patent appeals from the district courts throughout the nation, together with all appeals from the Patent and Trademark Office and the International Trade Commission, will be resolved in a single tribunal, under a single national law.  However, as this case illustrates, this goal is being undermined by a hodgepodge of procedural rulings, inferences, and presumptions that ignore the routine mechanisms of patent examination, that confound the standards of review, and that misapply the principles of administrative deference.  The loser is the technology community, whose incentive for innovation and commerce the patent system serves.  As former Commissioner of Patents and Trademarks Donald Banner testified in supporting formation of the Federal Circuit:

> Unless the inventor can have reasonable certainty, that, once granted, his patent is (1) valid and (2) enforceable, then the rights conveyed by a patent are illusory, the government has defaulted on its responsibilities under the patent contract, the patent is worthless, and ultimately, the patent system becomes a cruel hoax.

*Court of Appeals for the Federal Circuit:  Hearings Before the Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the Comm. of the Judiciary*, 97th Cong. 177-78 (1981).

The Federal Circuit resulted from a collaboration of industry and government that undertook to understand how the law—all areas of law—serve technological advance.  Much has been written about the Domestic Policy Review of Industrial Innovation, led by President Carter,[1]

---

[1]    *See, e.g.*, Pauline Newman, *The Federal Circuit— A Reminiscence*, 14 Geo. Mason U. L. Rev. 513, 514 (1992)

and I here focus only on the aspect that led to stabilization of patent law through judicial restructure.

It was recognized that the inconsistency and unreliability of judicial application of law was more extreme as to patent law than for any other area of federal law. The variation among tribunals was notorious, as was the "notorious difference between the standards applied by the Patent Office and by the courts," as stated a decade earlier in *Graham v. John Deere Co.*, 383 U.S. 1, 18 (1966). The detriment to innovative advance and industrial activity was well recognized. Chief Judge Markey of the Court of Customs and Patent Appeals testified that:

> The crying need for definitive, uniform, judicial interpretation of the national law of patents, on which our citizens may rely and plan with some certainty, has been recognized for over 60 years.

*Hearings*, 97th Cong. 7.

The conclusion that a uniform national patent law, consistently applied in the Patent Office and the courts, was critical to the nation's technological leadership and industrial strength was implemented by the simple expedient of consolidating all patent appeals in a single court. The House Report summarized the proposed consolidation:

> Presently, there are three possible forums for patent litigation: the Court of Customs and Patent Appeals, a federal district court, or the Court of Claims. . . . [T]he primary problem in this area is uncertainty which results from inconsistent application of the law to the facts of an individual

---

(discussing *Domestic Policy Review of Industrial Innovation*, (Final Report, U.S. Dep't of Commerce (1979))).

case. . . .[T]he merger proposal directly addresses
the issue.

H.R. Rep. 97-312, at 21 (1981).

To aid in assuring that patentability is governed by
the same law in the Patent Office as in the courts, the
Federal Courts Improvement Act of 1982 eliminated the
separate appellate paths of the Court of Customs and
Patent Appeals and the regional circuit courts of appeal.
The charge to the Federal Circuit was ambitious: to bring
certainty and predictability to the patent system and thus
to provide enhanced incentive to invention and innova-
tion, by assuring that the same law is applied in all
tribunals.  To this end, the court gives objective, *de novo*
review to rulings of patent law, whatever their source.
*E.g.*, *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d
1448, 1455 (Fed. Cir. 1998) (claim interpretation is a
question of law, and receives de novo determination on
appeal).

However, perhaps in accommodation to the increasing
complexity of technological subject matter, perhaps by
inadvertence, there has arisen the situation illustrated in
this appeal, where the same issue can be finally adjudi-
cated to different appellate outcomes, depending on the
tribunal from which it came.  This distortion appears to
be related to misunderstanding of the role of "broadest
reasonable interpretation" in patent examination.  Thus I
write to encourage remedial attention, for the resulting
uncertainty is no less pernicious than the intercircuit
conflicts of thirty years past.  I agree with Judge Plager's
analysis of this situation, in his "Additional Views" here-
with, but I am impatient with the absence of resolution of
the conflicts that have arisen.

The "broadest reasonable interpretation" is an exami-
nation protocol, not a rule of law.  In its implementation,

the examiner starts with a blank slate on which the applicant has described the subject matter he wishes to patent. The examiner is charged with searching the entire world knowledge, and to decide what the applicant is entitled to claim, as a matter of law. *See Manual of Patent Examining Procedure* §706 ("After the application has been read and the claimed invention understood, a prior art search for the claimed invention is made."). In this demanding process, the examiner views the applicant's presentation broadly, in order to assure that all possibly relevant prior art is explored. That is the role of "broadest reasonable interpretation": it is an examination tool whereby the applicant and the examiner work together to determine and define the "invention" to be claimed.

The PTO examination is charged with assuring that the patent complies with the law, objectively and correctly. If the applicant disagrees with the outcome and takes the PTO decision to judicial review, the court again applies the law, objectively and correctly. It is irrelevant by what path the examiner and the applicant reached their final resolution; that resolution is judicially reviewed for correctness in law. Similarly when patentability is challenged in litigation, the patent grant is judicially reviewed for correctness in law. Questions of law receive *de novo* determination, however the questions reach the court.

The "broadest reasonable interpretation" applies to the initial consideration of patentability, not to the final decision. This protocol was discussed in *Application of Kebrich*, 201 F.2d 951, 954 (CCPA 1953) ("the tribunals [of the Patent Office] and the reviewing courts in the initial consideration of patentability will give claims the broadest interpretation which, within reason, may be applied."). The purpose has often been explained:

[D]uring patent prosecution when claims can be amended, ambiguities should be recognized, scope and breadth of language explored, and clarification imposed. The issued claims are the measure of the protected right. An essential purpose of patent examination is to fashion claims that are precise, clear, correct, and unambiguous. Only in this way can uncertainties of claim scope be removed, as much as possible, during the administrative process.

*In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989) (internal citations omitted).

There are traditional differences in the placement of the burdens of production and proof, in PTO examination and in litigation. The burden of proof in litigation takes cognizance of the patent examination conducted by an expert agency, but this does not dilute the requirement that questions of law must be decided objectively and correctly. This standard methodology is outlined in *TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1139 (Fed. Cir. 2004): "Our validity analysis is a two-step procedure: 'The first step involves the proper interpretation of the claims. The second step involves determining whether the limitations of the claims as properly interpreted are met by the prior art,'" quoting *Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed. Cir. 1994). Whether the PTO used a "broadest reasonable interpretation" in examining the application is irrelevant.

Although the internal procedures of administrative and litigating tribunals are historically different, for questions of law the decision must be correct. For Federal Circuit review of patentability the criterion is correctness, whether initially decided in the district courts, the Patent

and Trademark Office, the International Trade Commission, or the Court of Federal Claims.  Thus on appeal from the PTO to the Federal Circuit, the court reviews the PTO's decision for correctness, "just as we review claim construction by a district court." *In re Baker Hughes Inc.*, 215 F.3d 1297, 1301 (Fed. Cir. 2000).  These procedures have become beclouded, as in *In re Morris*, 127 F.3d 1048 (Fed. Cir. 1997), where this court stated the question as whether the PTO's interpretation of disputed claim language was "reasonable."  *Id.* at 1055.  Still, this court decided whether Morris was entitled to the requested claim scope as a matter of objective law, on *de novo* review of the PTO's decision.

The same rules apply on review of reexamination as on initial examination, as the PTO observed with respect to the Flo Healthcare claims herein.  It remains the rule that "[o]bviousness under section 103 is a question of law that this court reviews *de novo*," and "claim construction, when, as here, there are no underlying factual issues, is also a question of law that we review *de novo*."  *In re Donaldson Co.*, 16 F.3d 1189, 1192 (Fed. Cir. 1994).  The *Donaldson* court held that on reexamination "the PTO erred in its construction [of the claims] and this error consequently led the PTO to impose an improper obviousness rejection."  *Id.*

In the reexamination appeal now before us, the PTO states in its brief that "During reexamination – as in ex parte prosecution – claims are given their broadest reasonable interpretation consistent with the specification . . ."  That is correct.  However, the PTO then advises: "Thus, this Court reviews the USPTO's interpretation of disputed claim language to determine whether it is 'reasonable' in light of the specification."  That is incorrect.  It is incorrect to convert a search and examination expedient into a requirement of appellate deference.  I again remind

us of the problems the Federal Circuit was designed to remedy:

> [T]here are areas of the law in which the appellate courts reach inconsistent decisions on the same issue, or in which—although the rule of law may be fairly clear—courts apply the law unevenly when faced with the facts of individual cases. . . . merger of the Court of Claims and the Court of Customs and Patent Appeals addresses these problems.

S. Rep. 96-304, at 9 (1979). This purpose requires the establishment of uniform law, and its correct application.